Our first case is 5090342, American Family Mutual Insurance v. Risinger. For the appellant, we have Mr. Long. For the appellee, Ms. Hunson. Mr. Long, when you're ready. Thank you, Your Honor. Five years ago today, August 30, 2005, American Family mailed to Barbara LeGrand's attorney to meet its request for production in this case. Evidencing that Terry LeGrand forwarded a copy of the summons and complaint in case number 98-L-78 to American Family Mutual Insurance Company and or one of the states that request for production was passed along to Barbara LeGrand. And she began a search in her residence, which is a mobile home here on the property. She specifically searched in a closet in a spare bedroom. That closet is shown in Counter Plaintiff's Exhibit Number 20. The court can see a stack of boxes in there. She testified at trial that she went through those boxes one by one by taking the top box off, setting it in the middle of the floor, sitting down and going through it. She testified that she searched in that manner for an hour or two. And she testified that her search resulted in finding the six-page receipt document that's been introduced as Counter Plaintiff's Exhibit Number 13. And I've included that in the supplementary appendix that starts at page 3 and goes on to page 8. There are three component parts to the receipt document. The last part is the complaint in the underlying court suit brought by Gary Stone. That's four pages long and that bears the file stamp January 29, 1998. The second page was a copy of the alias summons served on Terry Legrand on July 6, 1998. The court can see the handwritten date of service written at the bottom, 7698, and the printed name of the process server, Mike Mergic, special process server can be seen at the bottom of the page. It's interesting to note that there's no file stamp on that copy of the alias summons. And this is exactly what one would expect if it were the service copy that was left by the process server with Terry Legrand. The first page was the purported receipt. I'll use purported receipt. We certainly believe it's the receipt. Dated July 12, 1998 and apparently bearing the signature of Patrick E. Threlkeld. Patrick E. Threlkeld was the American family's captive agent, and those were the words used by the American family's attorney at the trial of this case. He was the American family's captive agent who serviced Terry Legrand's automobile liability insurance policy during 1998. There are what I would call five internal indicia of the genuineness of page one. That's the page in which the signature appears. The blueprinted watermarks that say American family insurance, auto, home, business, health, life, one on the front, two on the back, were genuine. There's absolutely no doubt about that. Patrick Threlkeld, the agent, looked at the watermarks and said they were genuine. The American family's own document examiner, Examiner William Storer, looked at the watermarks and said they were genuine. Our document examiner, Steven McCaskill, looked at the watermarks and said that they were genuine. And they proved that this was indeed the genuine stationery of American family. The second indicia or indicium of genuineness was that the watermarks corresponded to the kind of watermark that American family used in 1998. This is significant because Mr. Threlkeld testified at trial that the watermarks used by American family varied over time. And the court conceded the fact that they varied by looking at the various examples of American family insurance stationery in the file. The other stationery that we have from 1998 is part of Counter Plants Exhibit 15. I believe it's a declarations page, a transmittal letter perhaps, a declarations page. I think there are two or three sheets there which have exactly the same kind of watermark as appears on the receipt document, Counter Plants Exhibit 13. There are other examples of American family stationery in the record on appeal that show no watermarks. There's a letter from 1996, it's Exhibit 2B. The Reservation of Rights letter, which dates from November 2003, has no watermark on it. But the watermark on this exhibit, this Exhibit 13 receipt document, which document was dated July 12, 1998, bears the same watermark that was on the stationery that we know for a fact also came from 1998. And that's the declarations page and the other documents in Counter Plants Exhibit 15. The third indicium of genuineness is that the stationery, the watermark stationery on which page one of the receipt document was printed, absolutely had to come from American family. And the word absolutely was an adverb applied to it by Patrick Threlkel, the agent who testified about death in the wild. The fourth indicium of genuineness is that American Family's own document examiner, William Storer, examined the document in my law office, I believe it was October 21, 2005, and he immediately expressed the opinion to American Family's attorney that there was, quote, no evidence of forgery in the signature. The fifth indicium of genuineness, internal indicium of genuineness, I believe, is the ray line in the document. If you look at the ray line, there's a rather lengthy claim number. It's 141-235526. That had been assigned by American Family's field casualty claim examiner, Linda Fairharsh, to Terry Legrand's own claim against the third driver in this accident on February 19, 1996. This number would have been readily available to the agent, Patrick Threlkel, but not readily available to anyone else. In addition to that, there are at least three, what I would call three external indicia of genuineness, of the genuineness of page one and the signature on it. The first is the opinion expressed by Barbara Legrand's own document examiner, Stephen Cassidy. He examined the signature, compared it to, I think we had nine exemplars of Patrick Threlkel's signature, which he made at his deposition in July of 2006. We also had examples from the production of American Family, and some of those were photocopied, and Mr. McCaskill mentioned the fact that some of his examples were photocopied. But his finding number one was that it was the genuine signature of Patrick B. Threlkel on the receipt document. This constitutes the only expert opinion of a document examiner in this case as to the genuineness of the signature of Patrick B. Threlkel on the document. Now, I say that it's the only expert opinion on this. Mr. Storer gave a, you might say, closely related opinion, but what he said specifically was that there was no evidence of forgery in the signature. American Family has been at pains in this case to say, well, that's different from saying that William Storer expressed the opinion that it was, in fact, the genuine signature of Patrick Threlkel. Oh, didn't Threlkel say, when he testified, didn't he say, that's my name or something like that? He said that five times. He didn't say that he signed it. He said, that's my signature. Well, he said, it appears to be my signature. It appears to be, okay. It appears to be my signature. He said that five times. What's the effect of Judge Donovan's finding in the Rule 23? After reviewing the record, find that the estate presented a crime of facial case for vexatious refusal. Doesn't that consider that it was already received? I believe that it does. That question is inherently a broad question. With respect to the letter, I would have to say this. The court's order did contemplate the crime of facial case of vexatiousness without acknowledging that the insurance company received or the agent received the summons. I'm not going to argue with the court on that. I agree completely. I mean, I think that that's, I think that applies to that and applies to most of what the. My second question, then, is, Vince, it's important to remember that a directed finding was entered at the close of the estate's case and that on remand, American Family will have an opportunity to present its case. Was that done in this case here? All that American Family did was to put Patrick Threlfall up there and have him. On remand. On the remand. On the remand. That's right. And he testified, he testified not that there didn't appear to be a signature, but that there were other things that led him to think that it wasn't his signature. For example, it's packed all in caps. He said he got an F in it. But, Cardinal, you briefly said at the close of the estate's case, American Family moved for a directed finding. Well, that was the first time. That was on January 23, 2007. What I was talking about was after the remand on April 15, 2009. So the insurance company did present evidence on remand. Well, they did. They presented Threlfall's testimony. I think there were about three things. He said it was typed all in caps. He said he wouldn't have done that. He said it was typed in legalese. He wouldn't have used that language. He said that the word alias summons was used. He didn't know what that was. He wouldn't have used it, although the very next page had it at the top. And what's our standard review? What deference do we give to the Judge Duff's finding? With respect to the genuineness of the receipt, I believe the court's going to have to use a manifest way to be able to stand it. And that's because the order did contemplate the more evidence would be presented. On other matters that Judge Duff addressed, I think that it's deniable because, to me, it seems that it's clearly contrary to the finding. The finding of no vexatiousness? I think that those issues were foreclosed by the court's first order. American Family didn't attempt to offer any evidence with respect to that. The only evidence it offered on the remand was Patrick Threlfall's denying that this was his signature. So if the court gets past that and decides, well, he may have denied it, but he obviously forgot that he did it, then there's nothing else that American Family presented that would argue against the existence of an undisclosed record. Well, it was offered three options. He either got it, he didn't get it, either it wasn't delivered, so that's the end of the story. It was delivered, and then how they acted after it was delivered was either vexatious or not vexatious. Won't those be the three options we have? Well, no, you're reducing me on the three. I see two, either he didn't get it and that's the end of the story, perhaps, although there's another. If he got it, is that the end of the story, too? It is because American Family's attorney, in her opening statement on January 23, 2007, said specifically, and I've referred to this in the brief, that Patrick Threlfall was a captive agent of American Family. If he got the summons, that was notice to American Family. So she said that as explicitly as it could be said, and there's no backing away from that when she's making an admission like that. Didn't this court already find that Stone's letter to the insurance company in January of 2001 was evidence that the insurance company possessed actual knowledge? Yes, it did, and that's the second part of this case. This court, as explicitly as it could find, found that that was notice to American Family. And on the remand, I brought that up, I handed a copy of that, of the letter to the trial court. The trial court said, well, the appellate court was possibly in error because it hadn't been admitted in evidence before her and that she had some other reason for not wanting to rely upon it. And then she made a finding, number four, which specifically said that there was no actual notice to American Family. Well, it's not the province of the trial court to be lecturing the appellate court and overruling it or attempting to overrule it. I don't want to – well, I want to be respectful to Judge Duff, but she was completely wrong on that. When this court speaks, when any appellate court speaks fairly like that, then that's the law of the case. Now, I'm kind of jumping ahead here, but one of the issues that American Family has raised here is that, well, it was a finding of fact, and a finding of fact can't be the law of the case. And there is a case from the 1st District from 1980 which says that, Zolkoits v. Balding, but it almost stands alone. There has been two cases of – well, there's one case from this court that cited Zolkoits called Collier v. Collier. Then there's a later case called Petrolaine v. Sergass that cited Collier. The two 5th District cases can be read – now, I'm not saying they should be read this way, but they can be read as saying that a finding of fact that was presented but not decided by the appellate court is not part of the law of the case. That would make it consistent with everything else that exists in the case law. The fact is that the Eleanor Supreme Court said in this P.A.L. v. Granite – I forget, it was Granite City Investment Company case – said that the decision of an appellate court is final in all matters decided without making some kind of distinction between law and fact. There have been at least three 1st District cases since, I think, 2003 that have said the same thing. And there was a case from the 2nd District – I've cited these in my reply brief. There was a case in the 2nd District involving the county of DuPage decided in October of 2009, which specifically considered the same argument that the law of the case doesn't apply to findings of fact. And the court rejected that. So – and one more thing I need to say on that point is a rule like that just – it courts disaster, because if a decision comes back down from the appellate court and the proc court is thinking to itself, well, findings of law are the law of the case and they bind me, but findings of fact are not the law of the case and I can do what I want. That's going to engender confusion as to how the trial court should proceed and how parties should prepare to litigate a case on remand. So it has to be the law, as the Illinois Supreme Court has already stated, that all findings by an appellate court, and it's a decision on a first appeal in a case, have to be – they're the law of the case. They're binding on the litigants. They're binding on the trial court. And there's no distinction between whether it's a finding of law or a finding of fact. And if an error, if an alleged error creeps in, the only remedy that an aggrieved party has – I guess you might say there are two possible remedies. One is to file a petition for rehearing under Rule 367. The other is to file a petition for leave to appeal to the Illinois Supreme Court under Rule 315. If you don't avail yourself of either one, you're stuck with it. I mean, it is the law of the case and there's no questioning it. There's no going behind it. There's no saying, well, it should have been this or it should have been that, that it's somehow – it's possibly an error, which is what the trial court said here. None of that's permissible. So that's the second basis, that letter of January 10, 2001, for saying that there was notice to American family. Now I'm not even sure if Judge Duff put that in the record. I can't remember if she took it and put it in the record when I handed it to her. But it is in the record. It's attached to the motion for summary judgment made by Gary Stone's attorney. I think that's at page C-64 through C-69. It's in that area there, but it is in the record. Whether she – the transcript shows that I handed it to her at the end of the hearing on April 15th. Whether it's a part of the record as of that date, I don't know. Let me say one other thing about an indicio of genuineness. To me – perhaps I don't need to say it, but let me make this observation. It's completely absurd to imply, as the American family does, that this receipt could have been the product of a forgery. We got – this thing was mailed August 30th. We got it back to him by September 7th. For Barbara Legrand to have forged this, she would have had to have got genuine American stationery with watermarks on it. She would have got an example of Patrick Threlfeld's signature. She would have had to forge it so expertly that there was no evidence of forgery. She would have had to have gotten a claim number. It's just absurd to even think that that would happen. So even though the trial court specifically found that she deemed Patrick Threlfeld to be credible and implied that she deemed Barbara Legrand not to be credible, that can't be some sort of magic incantation that insulates it from review. On the claim number, is there any evidence that the claim number is not to this case? No, it's to this case. And on date-wise? I mean, I'm sure they run the claim numbers consecutively. Well, if you look, there's a letter in the file. I think we've got Exhibits 2A and 2B. These are the letters from Linda Bearhorse from 1996. I think they're dated February 19. One is a copy of the letter to Reisinger, the third driver in the accident. And the other is, I think that's 2B. The other is a copy that came to Terry Legrand. I have an opportunity for rebuttal, but if you want to change that sentence, go ahead. Well, the claim number, it's definitely the right claim number. I mean, if you look at that, it was assigned to it by the claim examiner, perhaps on the date of that letter. But there's no doubt it's the right claim number. And it's a likely claim number, too. Thank you. We have an opportunity for rebuttal, Ms. Hensel. In response, it might be best to pick up exactly where the court has left off with counsel's argument. With regard to the claim number, that claim number was assigned to the entire accident. And it's true that it is the correct claim number. But it was also used in multiple correspondence to Mr. Legrand immediately after the accident. He actually had a claim. It was a property damage claim. So that claim number is not something that's just in the insurance company's files. It doesn't exist separate and apart from the knowledge of anyone else involved in the accident. So just to clarify, yes, in fact, it was the claim number. I would like to point out to the court that it is our position that on the Rule 23 order that this court made a very simple determination. It determined that the plaintiffs, it looked at all of the plaintiff's evidence and said to the estate, you have presented some evidence on every facet of a case for vexatiousness. We see some on every aspect. And it cited a whole lot of facts in that Rule 23 order. Then it said, so therefore, the defendants moving for a directive finding, the courts granting a directive finding was improper because the estate had enough evidence that it should be able to go to the trier of fact. And so this court on that Rule 23 order had a very, very narrow holding, in my opinion. It sent this case back to the trial court and said, pick it up at the end of the plaintiff's case. Let the plaintiff reopen and put in some evidence of his attorney's fees in the appellate court. But then pick the trial up and finish it. Let the defense put their case on. So it's our position that when the numerous facts that were cited by the appellate court in that Rule 23 order were not the law of the case, that you were simply saying, the court was simply saying, here's the evidence that you presented to state. What did you put on on remand? Pardon me? What evidence did you put on on remand? I put Mr. Frecheld on steam. He testified succinctly, I thought, that even though that signature appeared to be his signature, that he did not believe he signed it. He had a number of reasons why. It was dated on a Sunday. He never opened his office on a Sunday. It was all in caps. He would never use all in caps. He types his own letters that he had a secretary who may type occasionally, but she would never type that way. The prose was not his. And, in fact, the watermark on the stationery was used improperly. It was actually flipped over. There are two on one side and one on the other, and it's proper to use it the opposite way it was used in this situation. So he had a number of reasons why he did not believe that he signed that document in the form that it was in. Now, my expert did indicate that there was no way to tell if his signature had been placed on that sheet of paper before the typewritten word or afterwards. There was no way to tell. Other than the agent, any other testimony or evidence? I did not present any other testimony or evidence. But our position here is, and I think it's very clear with the Fifth District cases that we cited, that on that Rule 23 order, when the court determined that it was to go back to the trial court for the completion of the trial, that was the holding of the Rule 23 order. I don't think this court intended on saying all of this evidence is credible. We believe it establishes the case. It simply was that you have enough evidence on every element. And what happened is that that letter, that 2001 letter, was determined to have been put into evidence, and it never was. The 2001 letter by David Nestor, January of 2001, was never offered into evidence by the plaintiff in this case. Now, I think it was mistakenly cited as being part of the estate's evidence. I don't think this court intended to cite it. I do not believe that having cited it mistakenly that it would seriously send the case back down to a trial judge and say, finish up this case, but consider this piece of evidence that was not in evidence. I believe what happened here was a mistake. It was put in. It was not intended to be put in. And when we look back at where that letter came from, it was a motion for summary judgment that was filed by Mr. Nestor early on in the case, before American Families settled the case. It wasn't offered into evidence. I don't know why it wasn't offered into evidence. Perhaps Mr. Long consulted with Mr. Nestor and determined he really couldn't prove it was sent. I don't know why, but it was not offered into evidence. And what Mr. Long wants this court to do, he wants this court to say, that was a mistake, it's a windfall, my client should profit from it. But if you look at what the mandate of this court was, it was simply that the estate has offered these pieces of evidence, now we're going to make it go back down and finish the case. That is the very limousine holding of that case. And those two Fifth District appellate cases that I cited that have to do with this very issue, the Jones v. Petroling and the Callier v. Callier, both those cases where the court determined that they made a very specific finding. In the Jones case, the court said the only issue that we decided in the prior case was that evidence presented at the trial level did not support the jury verdict. That's all we were deciding. We didn't decide facts, we didn't decide anything else. And so when we go back down to the trial court, the trial court has to make all the rest of the decisions. That's what Jones says. That is a Fifth District appellate court case. And Mr. Long has argued that this is not good law, but it's not been overturned. No one has overturned it. And it is the law in our district. The second case, the Callier case, which is also a Fifth District case, the holding was almost exactly like what we have here. The court said that the only issue that we decided was that evidence presented was insufficient to prove either a deadlock or an irreparable injury. So the appellate court, this district said, in that case, we're sending it back down, and this is all we decided. We didn't decide these other things. We didn't decide facts. And these two cases do specifically say that decisions of fact are not the law of the case. So I would ask the court to take a look at that Rule 23 order. I'm looking at it, and I tend to agree with what you just said. I'm going to ask Mr. Long to clarify that position that he's taken because it does say that on remand, an American family will have an opportunity to present his defense. It wasn't just sent back for the issue of attorney's fees and costs. It was for the entire trial, for you to allow to present your defense. So assuming that that was the Rule 23, what is our standard of review? Manifest right of the evidence. And let me ask you another question. Did we also ñ did you settle this case? This $134,000 default judgment was set aside. You settled it for $50,000? I did, Your Honor. Okay, so the estate was out no money. That's exactly right. What about the attorney's fees and costs? We offered to pay those at that time. And why did they refuse it? They filed their taxation claim after that offer. Okay. All right. So I think I've covered the issues that I wanted to cover with regard to what the very specific findings are. If you presented any evidence on remand, what would the trial court have done? What could it have done other than direct the verdict for the plaintiff? I think ñ I mean, do you think the trial court would then have been mandated to direct the verdict for the plaintiff? Had you come back and not presented it, Mr. Thurow? I don't think so. And you and I might differ on that. So what's a prima facie case mean? To me, a prima facie case means you have presented some evidence on every element of the case. Now, I don't think that we would ñ I say when the court says a prima facie case that the court is saying it is credible, believable evidence or evidence that we would lead us to a verdict on that issue. That's where perhaps you and I disagree. But I define a prima facie case in that manner. And in addition here, with regard to the receipt, there was evidence in the stipulations that the parties entered into. My expert's evidence was in a stipulation where they said that they found no benchmark forgery in the signature. That was a stipulation. But also, there was also a stipulation that the paper was used incorrectly. It was clear from the receipt that it was dated on a Sunday, that it was all in caps. And Mr. Freckel actually testified in the initial suit, in the initial evidence that Mr. Long presented. And it was ñ it was ñ there was some indication from him that the signature appeared to be his signature, but he wouldn't have written it that way. So I think there was some evidence there that the court could have found in my favor. But I do think that in coming back when he specifically said I didn't do it ñ now, and I raised a lot of issues. Mr. Long wants me to admit that I'm saying that Barbara LeGrand forged this document. That's ñ we've never said that. This document, wherever it came from, does appear to be from 1998. I don't know who put it together. I don't think there's enough evidence to say who put it together. But we have always contended in this case that there is ñ there is a question as to the authenticity or genuineness of the entire document. That is, where the signature is placed, that it is underneath this ñ these ñ the wording. We have never said that this document is genuine. Now, there's been an argument made that I am precluded from arguing that Freckel didn't sign the document because at some point in the post-trial motion I made a statement that indicated that American family, when they determined that the signature was genuine, attempted to settle the case. Well, as I go back and look at Black's dictionary, genuine means free of forgery. Perhaps it was an inartful term on my part, but in that post-trial motion, what I was trying to explain to the court was that once American family sent it to a document examiner, and this was very quick, as soon as they gave us the receipt in September, actually almost the first part of October, I sent that document to an examiner. He gave us an opinion very quickly. I mean, as soon as we got that opinion, the American family went to the plaintiff in the other case and settled that case and settled it very, very quickly. But the point was, tactically, what I was trying to explain to the court was that American family had the document examiner who says we can't find any evidence of forgery. He didn't say it wasn't the guy's signature. We have an agent who says I didn't sign it. What's American family supposed to do? In my opinion, they did what was in good faith there. They took their insurance interest to heart, and they said we can't just blindly go on. It would be very hard to prove that it is not his signature. Therefore, we're going to settle this case, and we're going to settle it now. Now, that's part of my argument that I made to the court, that I don't think that their actions in this case were vexatious. They settled it immediately by December. We almost had a release, and the judgment was set aside. We offered to pay attorneys' fees and costs. And it was as soon as they gave us the receipt. Had that receipt been presented much, much earlier, this case may have gone away. But our point in the fact that we have a document examiner who says I can't find any evidence of forgery, that doesn't equate to not allowing Threckel to testify that he didn't sign it. And Threckel, according to the trial court, listening to his testimony, it was believable. However his signature got there, she believed that he didn't put it, that it wasn't put on that document with that wording on there. May I ask you this question? The agent's testimony and position aside, do you not agree that it's law of the case that we found that Stone's letter to the insurance company in January of 2001 was evidence that the insurance company was presented or possessed actual knowledge of this claim? I don't think that's the law of the case. I don't think you were citing it as the law of the case. I think you were saying in that opinion, here's what evidence the estate put on. It was mistakenly cited. And I don't think that this court would have intentionally mistakenly cited it. I don't think the court would have intentionally sent a case back down to the trial court and said, you've got to consider something that you didn't hear in evidence. And I think if you look at what Judge Duff said in her statement at the end of the case, she wasn't saying to the appellate court, she wasn't chiding the appellate court or saying you were wrong or trying to overrule you. She was just saying I don't understand here. I didn't get that evidence. You have told me to take this case back and to finish hearing it. That's what I want to do. And that's what I'm going to do. But I don't believe I can consider evidence that wasn't placed in front of me. And I think that she was correct in that issue. And I think that those two 5th District cases that I cited are very instructive on that issue. If the appellate court in that Rule 23 order is making a very narrow finding, and I think you did here, you're making the finding that, look, there's some evidence on every element. You've got to let the trier of fact have it, that that is the finding that you had, and it doesn't go on to say that all this evidence becomes the law of the case. One final point I want to make, we've had a lot of discussion, and we argued this to great detail in the prior argument, but there are a number of cases in the state of Illinois with regards to vexatious refusal to pay. It is in our belief, and I think the case law supports this, the trial court's determination as to whether something is vexatious and unreasonable. I do not believe that, based upon the totality of the circumstances here, that Judge Duff's ruling was against the manifest way of the evidence. There's a case that's cited that's very familiar probably to all of us. It's that Richardson case out of St. Clair County. And in that case, there's a perfect example of an insurance company that just simply ignored everything. I mean, they were actually in that lawsuit. They were a defendant in the lawsuit. They refused to respond to requests for admission. They didn't respond to a motion for summary judgment. The Illinois Power claims superintendent said that he, on multiple occasions, asked them to defend, and they refused. They sat on their hands. They didn't do anything. That's a case in which an insurance company ought to face the damages under the statute. Here, this company, whether you believe that they got the letter or not, I think there are three options. If you believe they got the letter but they didn't realize, that the claims department didn't realize, that it was simply a misstep or a mistake on the part of the insurance company, is that the kind of case that we want in the state of Illinois to determine that an insurance company should pay huge damages, especially when they immediately moved to try to make things right? They settled it. They offered to pay attorneys fees and costs. Is that the type of law that this Court wants to make that Section 155 stands for? 155 is designed certainly to help the policyholder, to assist them to be able to file a suit against their insurance company when they've been egregiously treated. And in this case, I do not believe, and I don't think the trial court felt, that it rose to the level of vexatious refusal. Thank you. Thank you, counsel. Mr. Long, rebuttal. So you know where you're going to start, right? You're going to start with that statement from our Rule 23 that it is important to remember that a directed finding was entered at the closing of the state's case and that an American family will have an opportunity to present its defense. Well, my first point would be, except for the matter of the genuineness of the issue of capital fraud, they didn't present any other defense. But to back up, when the Court made specific findings of fact, I mean, such as the fact that that letter was in evidence, that January 10, 2001 evidence, how can that be banished away here? I mean, how can that be? If the attorney for an American family had filed a petition for a rehearing and made the arguments then, which he's making now, the Court could have addressed it. It didn't. I mean, I filed a petition for a rehearing because at first the Court had said it was remanded for a new trial, and I wanted it to pick up. So I filed a petition for a rehearing. I was wondering when they were going to file a petition for a rehearing, if they had any concerns about any of the Rule 23 order. They didn't file them. So now what this amounts to is an effort after the fact, after they've waived the right to file a petition for a rehearing, after they've waived the right to file a petition for legal appeal, an attempt to change something that they should have, they had concerns they should have addressed it then. And as I've already argued, the O&S Supreme Court said clearly that all findings of a court of review and its opinion are the law of the case. There's no distinction between fact and law, and if the Court would read these cases I cited in the reply brief, you'll see that there's been a steady stream of these decisions saying specifically that the law of the case applies to facts as well as to law. One thing I'd like to – I didn't get to this, but after the first trial, American Family filed a response to my post-trial motion, and as to their reasons for settling the case, they said a number of things. One of the things they said was this. In reality, defendants settled the underlying suit when it became clear that the American Family's agent's signature on a receipt of the summons and complaint was genuine. That wasn't all. In the same document they said, here the undisputed facts indicate there is an authentic signature of an agent of the insurer on receipt of summons on July 12, 1998. They also said the insurer settled the case within five days of verifying the authenticity of the agent's signature on the receipt. I'm not quite sure when the signature ceased to be authentic. I mean, it's shortly after they paid the $50,000 on the strength of it being authentic, when the widow filed her claim under Section 155. As to whether there was vexatious and unreasonable conduct, I'd just like to suggest this to the Court's consideration. This was a case that was a sure winner for Terry LeGrand. He had no liability. He had no negligence at all. If the American Family had done anything in the way of defending him, he would have won it. He would have gotten a not guilty. But they, by their inaction, by their failure to defend him, turned a sure winner into an excess liability case. They turned it into a $134,000 judgment against him, which happened to be $84,000 over and above his policy limits. And for them to act as though, well, there's no harm done because we settled it, you know, they settled it because we found the receipt. If we hadn't found the receipt, even though they did, in fact, have actual notice, they wouldn't have paid a dime to the insurance company. They certainly wouldn't. They'd still be fighting the widow as they have been. So to me it's clear that there was a vexatious and unreasonable failure to defend. As this Court stated twice in its modified upon denial of recourse Rule 23R, the Court stated that twice, that there was an unreasonable, one time it said unreasonable and vexatious, another place it said there was a vexatious refusal to defend. Didn't we say that the estate presented a prima facie case? Yes. That's not the same as saying that the estate proved vexatious. Well, judge not. To me it is because it's saying that you've proved enough to win your case. And when you go back down and there's no evidence to the contrary at all, how can you not win your case? I mean, I don't understand how you could not be in favor of that. You presented enough evidence to move the case along the defense. If they didn't present any evidence, then you win. But all you had was a prima facie case. You didn't have a directed finding on vexatious refusal from this Court. Well, that might go to the question of whether – that only goes to the question, as I see it, to whether the reviewers did no more of a manifest way. Even if it's a manifest way, we win. We're entitled to it. Appreciate your arguments. Thank you, counsel. The court will take the matter into advisement and render its decision to be forced.